1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

11   GLENN BOSWORTH,                    Case No. CV 14-0498 DMG (SS)

12              Plaintiff,
                                        **MEMORANDUM DECISION AND ORDER**
13       v.
                                        **DISMISSING COMPLAINT WITH**
14   UNITED STATES OF AMERICA,
     BALTAZAR MAGANA, et al.,           **LEAVE TO AMEND**
15
                Defendants.
16

17                              **I.**

18                         **INTRODUCTION**

19

20        On January 22, 2014, Plaintiff, a federal prisoner

21   proceeding pro se, filed a civil action under the Federal Tort

22   Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq.; Bivens v.

23   Six Unknown Named Agents, 403 U.S. 388 (1971); and 42 U.S.C.

24   § 1983 (the "Complaint"). For the reasons stated below, the

25   Complaint is dismissed, with leave to amend.[1]

26   _____

27   [1] Magistrate judges may dismiss a complaint with leave to amend
     without approval of the district judge. See McKeever v. Block,
28   932 F.2d 795, 795 (9th Cir. 1991).

1    Congress mandates that district courts perform an initial
2    screening of complaints in civil actions where a prisoner seeks
3    redress from a governmental entity or employee.  28 U.S.C.
4    § 1915A(a).  This Court may dismiss such a complaint, or any
5    portions thereof, before service of process if it concludes that
6    the complaint (1) is frivolous or malicious, (2) fails to state a
7    claim upon which relief can be granted, or (3) seeks monetary
8    relief from a defendant who is immune from such relief.  28
9    U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122,
10   1126-27 & n.7 (9th Cir. 2000) (en banc).

11

12                              **II.**

13                **FACTUAL ALLEGATIONS AND CLAIMS**

14

15   Plaintiff names as Defendants:  (1) the United States of
16   America; FCI-Lompoc correctional officers (2) Baltazar Magana,
17   (3) E. Lewis, (4) JOHN DOE Defendants 1-8, and (5) JANE ROE
18   Defendant 1; (6) the Lompoc Valley Medical Center ("LVMC");
19   (7) Michael Gill, M.D.; and LVMC employees (8) JOHN DOE
20   Defendants 9-20, and (9) JANE ROE Defendants 2-20.[2]  (Complaint
21   at 1, 4-7).  Magana and Lewis are sued in their individual
22   capacity only.  (Id. at 4).

23   _____

24   [2] Plaintiff identifies the following LVMC employees as "possible
     DOE and/or ROE Defendants":  C. Saber, R.N. (ROE 2); J. Lipazana
25   (ROE 3); C. Hernandez (ROE 4); and E.R. Wallace (DOE 9).
     (Complaint at 6).  However, Plaintiff states that "[t]o the
26   extent that any of the above are not culpable for the
     allegations, upon receipt of a personal affidavit from any such
27   individual describing in detail the events and those who are
     responsible, Plaintiff shall dismiss with prejudice any such name
28   individual from this CIVIL COMPLAINT."  (Id.).

                                 2

Plaintiff states that he suffered an injury to his left wrist and arm on April 8, 2012. (Complaint at 25). After being diagnosed with a broken wrist on April 10, 2012, Plaintiff was transported to LVMC for medical treatment. (Id.). Plaintiff was restrained with shackles on all four extremities en route to the hospital, including his broken left wrist. (Id. at 14).

At the hospital, DOE Defendants 1 and 2 shackled Plaintiff's legs and his right arm to the frame of his bed, leaving only his injured left arm unshackled. (Id.). Consequently, Plaintiff was forced to lie on his back in a fixed position. (Id.). Plaintiff remained shackled from the time he arrived at his hospital room at 8 p.m. on April 10, 2012, until his discharge at 5 p.m. on April 11, 2012. (Id. at 15). Plaintiff was guarded by DOE Defendants 1-7 and ROE Defendant 1 in shifts throughout his stay. (Id. at 5). DOE Defendant 3, who worked the night shift, applied a "black box" to Plaintiff's shackled right wrist. (Id.).

During the entire period Plaintiff was immobilized in hospital, ROE Defendants employed by LVMC "administered pain masking drugs intravenously." (Id. at 15). The purpose of the drugs was "to partially numb sensory perceptions of the severe pain, suffering and discomfort proximately inflicted by the excessive and/or unnecessary restraints." (Id. at 13). Because Plaintiff was shackled and drugged, his escorts were able to engage in personal activities during their work shifts such as smoking, talking on their cell phones, watching television and sleeping. (Id. at 17).

1    On April 11, 2012, Plaintiff was wheeled into surgery and
2  placed under general anesthesia. (Id. at 18). Dr. Michael Gill,
3  Officer Lewis, and DOE Defendants 4 and/or 8 were present during
4  the operation, as were nurse C. Saber (ROE Defendant 2), "relief"
5  J. Lipazana (ROE Defendant 3), "scrub" C. Hernandez (ROE
6  Defendant 4), and anesthesiologist E.R. Wallace (DOE Defendant
7  9). (Id. at 6 & 18). According to the complaint, the operation
8  lasted approximately ninety-nine minutes. (Id. at 18).

9

10    Plaintiff was returned to his room after the operation.
11  (Id. at 18-19). As he rose from the gurney to get into bed,
12  Plaintiff noticed that his underwear was at his ankles. (Id. at
13  19). Plaintiff attempted to pull up his underwear with his right
14  hand, but discovered that his underwear had been woven through
15  his leg shackles. (Id.). The underwear remained locked at
16  Plaintiff's ankles for several hours. (Id.). Plaintiff asserts
17  that there was no "medical justification for the removal of the
18  underwear after the surgery" as there was "no residual apparatus
19  of a catheter" or other device requiring that his genitals remain
20  uncovered.[3] (Id.).

21

22    Plaintiff alleges that he suffered a "harmful or offensive
23  contact" on his genitals when his underwear was removed. (Id.).
24  According to Plaintiff, the "malicious and sadistic" act of
25  removing his underwear and attaching it to his leg shackles was
26  intended "to intimidate, scare, threaten, humiliate and otherwise
27  inflict Plaintiff with severe emotional distress." (Id. at 20 &

28  _____
[3] Plaintiff was presumably covered by a gown and blanket.

4

25).  Plaintiff further believes that this was motivated by his "underlying case of conviction."[4]  (Id. at 20).

The Complaint raises three claims.  First, Plaintiff alleges that the United States is liable under the FTCA for the alleged sexual battery while he was under anesthesia.  (Id. at 11).  Second, Plaintiff alleges Magana, Lewis, DOE Defendants 1-9 [sic] and ROE Defendant 1 are liable under Bivens for "excessive force" in violation of his Eighth Amendment rights for keeping him shackled in hospital and removing his underwear.  (Id. at 12).  Third, Plaintiff alleges that LVMC, Dr. Gill, DOE Defendants 9-20 and ROE Defendants 2-20 are liable under section 1983 for deliberate indifference to his serious medical needs because they kept him in a drug-induced state to mask the pain of the excessive restraints, and because of the sexual battery.  (Id.).  Plaintiff seeks $14,000,000.00 in aggregate compensatory and punitive damages.  (Id. at 22).

**III.**

**DISCUSSION**

Plaintiff's Complaint must be dismissed under 28 U.S.C. § 1915A(a) due to pleading defects.  However, pro se litigants in

---

[4]  Plaintiff was convicted of one count of 18 U.S.C. § 2422(b), use of a facility of interstate commerce, i.e., the internet, to induce a minor to engage in criminal sexual activity.  See Bosworth v. United States, C.D. Cal. Case No. 13-8352 ODW, Dkt. No. 2, Exh. B at 15 (executed plea agreement).  The Court takes judicial notice of Plaintiff's other actions in this Court.  See In re Korean Air Lines Co., Ltd., 642 F.3d 685, 689 n.1 (9th Cir. 2011).

5

civil rights cases must be given leave to amend their complaints unless it is absolutely clear that the deficiencies cannot be cured by amendment. See Lopez, 203 F.3d at 1128-29. Accordingly, the Court dismisses the Complaint with leave to amend, as further explained below.

**A.   Standard**

Under the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As the Ninth Circuit has explained,

> Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," Twombly, 550 U.S. at 555, 127 S. Ct. 1955, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief, Iqbal, 556 U.S. at 678-79, 129 S. Ct. 1937. "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S. Ct. 1955. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it

6

stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678, 129 S. Ct. 1937 (citation and quotes omitted); accord Lacey v. Maricopa Cnty., 693 F.3d 896, 911 (9th Cir. 2012) (en banc).

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013); see also Iqbal, 556 U.S. at 679 (plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"); Lowe v. Devine, 371 Fed. Appx. 667 (7th Cir. 2010) (upholding dismissal of prisoner civil rights action where plaintiff's "fanciful allegations of improprieties . . . are facially implausible").

**B.    Plaintiff Does Not State A Claim For Sexual Battery**

The FTCA, as a limited waiver of sovereign immunity, is strictly construed, and all ambiguities are resolved in favor of the sovereign.  See United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992).  The FTCA grants federal district courts exclusive jurisdiction over "claims that are: '[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"

1    F.D.I.C. v. Meyer, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C.

2    § 1346(b) (ellipses in original)).  "[A] court must look to state

3    law for the purpose of defining the actionable wrong for which

4    the United States shall be liable . . . ."  United States v. Park

5    Place Assoc., Ltd., 563 F.3d 907, 922 (9th Cir. 2009) (internal

6    quotation marks omitted).  To recover under the FTCA, a plaintiff

7    "must show the government's actions, if committed by a private

8    party, would constitute a tort" under state law.[5]  Love v. United

9    States, 60 F.3d 642, 644 (9th Cir. 1995).

10

11        Under California law, a person commits sexual battery when

12   he "[a]cts with the intent to cause a harmful or offensive

13

14   [5]  The United States has not waived immunity for all torts,
     however.  "Intentional torts" such as assault and battery are not
15   actionable under the FTCA unless committed by an "investigative
     or law enforcement officer," defined by statute as "any officer
16   of the United States who is empowered by law to execute searches,
     to seize evidence, or to make arrests for violations of Federal
17   law."  28 U.S.C. § 2680(h).  The Supreme Court has specifically
     found that BOP correctional officers may be sued under the FTCA
18   pursuant to section 2680(h)'s "law enforcement proviso" when
     acting within the scope of their employment.  Millbrook v. United
19   States, __ U.S. __, 133 S. Ct. 1441, 1446 (2013); see also
     Bramwell v. United States Bureau of Prisons, 348 F.3d 804, 807
20   (9th Cir. 2003) ("[I]ntentional misconduct by BOP officers gives
     rise to a cause of action under § 2680(h).") (citing Carlson v.
21   Green, 446 U.S. 14, 20 (1980)).  California courts have found
     that the risk that law enforcement officers may abuse their
22   authority to use force by committing sexual assaults is
     reasonably foreseeable, thereby rendering such risk "broadly
23   incidental to the enterprise of law enforcement."  Mary M. v.
     City of Los Angeles, 54 Cal. 3d 202, 218 (1991).  Accordingly,
24   the California Supreme Court has held that a jury could
     reasonably conclude that an officer was acting in the course of
25   his employment when he committed a sexual assault on duty.  Id.
     Consequently, a properly-pled claim that a BOP correctional
26   officer committed sexual battery against a prisoner is cognizable
     under the FTCA.
27

28

1  contact with an intimate part of another, and a sexually
2  offensive contact with that person directly or indirectly
3  results." Cal. Civ. Code § 1708.5(a)(1); see also Shanahan v.
4  State Farm General Ins. Co., 193 Cal. App. 4th 780, 788 (2011)
5  ("[T]he tort of sexual battery requires an intent to cause a
6  harmful or offensive contact.") (internal quotation marks
7  omitted; brackets in original). "The elements of a battery claim
8  in California are that (1) the defendant intentionally did an act
9  that resulted in harmful or offensive contact with the
10 plaintiff's person, (2) the plaintiff did not consent to the
11 contact, and (3) the contact caused injury, damage, loss or harm
12 to the plaintiff." Tekle v. United States, 511 F.3d 839, 855
13 (9th Cir. 2007).

14

15     Plaintiff appears to allege that Lewis and DOE Defendant 4,
16 who were Plaintiff's officer escorts during the shift on April
17 11, 2012 when the operation took place, committed sexual battery
18 by removing his underwear.[6]  (Complaint at 5 & 11).  Plaintiff's
19 vague and conclusory claim fails to meet the plausibility
20 standard set by the Supreme Court in Twombly and Iqbal. As
21 alleged, Plaintiff's sexual battery claim is nothing more than an
22 unremarkable observation that Plaintiff's underwear was removed
23 in an operating room, where the use of catheters is standard and
24 unexceptional, while Plaintiff was under sedation for a 99-minute
25 operation.  However, the removal of a sedated patient's

26 _____
27 [6] Plaintiff also states elsewhere in the Complaint that DOE
   Defendant 8 may have been present during the operation, but does
   not indicate what he believes DOE Defendant 8 may have done.
28 (Id. at 18).

9

underwear, when it was not removed by the patient himself prior to surgery, is a routine occurrence.  Indeed, if the simple allegation that a patient's underwear was removed for surgery were sufficient, without more, to state a claim for sexual battery, nearly every person who has had an operation under general anesthesia would be able to assert a sexual battery claim.  Plaintiff's formulaic recitation of the elements of a sexual battery claim fails to rise "above the speculative level" of an entitlement to relief, Twombly, 550 U.S. at 555, and stops well "short of the line between possibility and plausibility" of such an entitlement.  Iqbal, 556 U.S. at 678.  Without any facts to distinguish Plaintiff's sexual battery claim from the common experience of surgery patients nationwide, Plaintiff fails to state a claim.

Furthermore, the fact that Plaintiff's underwear was woven through his leg shackles does not support a tort claim for sexual battery, which requires a harmful or offensive and unwanted intentional touching of an intimate part of a person's body. Cal. Civ. Code § 1708.5(a)(1).  Similarly, although Plaintiff appears to allege that there was no justifiable reason for his underwear to be kept at his ankles after surgery, the Complaint indicates that the removal of his underwear, i.e., the purportedly harmful touching, occurred in the operating room, where such a procedure would have been standard.  (Complaint at 19).  Accordingly, Plaintiff's sexual battery claim in Claim One must be dismissed, with leave to amend.

**C.** **Plaintiff's Allegations Of Sexual Abuse And The "Collateral Reasons" For His "Excessive Restraints" Fail To State An Excessive Force Claim**

Plaintiff alleges that the individual federal defendants, i.e., Magana, Lewis, DOE Defendants 1-8 and ROE Defendant 1, are liable for excessive force in violation of the Eighth Amendment for (1) unreasonably restraining him with leg and wrist shackles while he was hospitalized, and (2) sexually abusing him by removing his underwear and weaving it through his leg shackles when he was under sedation. (Complaint at 12).

The Eighth Amendment governs an inmate's excessive force claim against prison officials. In such a claim, the relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Courts considering a prisoner's Eighth Amendment claim "must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The Eighth Amendment's protection against cruel and unusual punishment does not authorize federal courts to interfere whenever prisoners are inconvenienced or suffer de minimis injuries. Wright v. Rushen, 642 F.2d 1129, 1132 (9th Cir. 1981) (courts should avoid enmeshing themselves in the minutiae of

prison operations in the name of the Eighth Amendment of the Constitution); Hudson, 503 U.S. at 10 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights") (internal quotation marks omitted). However, it is well settled in this circuit that "[s]exual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." Wood v. Beauclair, 692 F.3d 1041, 1046 (9th Cir. 2012); Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000) (prisoners have a clearly established Eighth Amendment right "to be free from sexual abuse").

Plaintiff alleges that his prison escorts applied excessive force when they kept him restrained and immobilized by shackles on his legs and functioning right arm, such that he could not move for the approximately twenty hours he was hospitalized. (Complaint at 14-17). The use of shackles to restrain a prisoner, by itself, does not violate the Eighth Amendment. LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (requiring prisoner to shower while shackled is not cruel and unusual punishment where "the purpose of the restraints is not to injure [plaintiff] or make it difficult for him to shower, but . . . to protect staff"). However, Plaintiff alleges that he was completely immobilized by the shackles and states that they were excessively painful. (Complaint at 14). To that extent, the Complaint adequately, if minimally, states an Eighth Amendment claim.

1    However, Plaintiff apparently believes that he may support

2    his excessive force claim by and receive damages for the

3    purported _reason_ the correctional officers applied excessive

4    restraints, _i.e._, "so that they could do other, albeit personal

5    functions" such as watching television, taking smoking breaks,

6    making personal phone calls, engaging in personal conversations

7    and sleeping. (_Id._ at 16-17, 21-22). Plaintiff is mistaken. To

8    allege a _Bivens_ claim, Plaintiff must allege a violation of his

9    constitutional rights by a person acting under color of federal

10   law. _Morgan v. United States_, 323 F.3d 776, 780 (9th Cir. 2003).

11   Plaintiff does not have a constitutional right to escorts who do

12   not engage in personal activities on duty and it is utterly

13   frivolous to assert an entitlement to "damages" for acts that

14   were not directed toward him. (_Id._ at 22). Accordingly, to the

15   extent that Plaintiff is attempting to assert a claim for

16   excessive force based on the personal activities his escorts

17   engaged in at the hospital, the Complaint must be dismissed, with

18   leave to amend.

19

20   Additionally, to the extent that the "sexual abuse" giving

21   rise to Plaintiff's excessive force claim was the purported

22   sexual battery of pulling down Plaintiff's underwear in the

23   operating room, Plaintiff fails to state a claim for the reasons

24   discussed in Part III.A above. To the extent that Plaintiff's

25   Eighth Amendment claim is based on the fact that Plaintiff's

26   underwear was woven through his leg shackles, the Complaint also

27   fails to state a claim. Plaintiff alleges that he noticed that

28   his underwear was intertwined with his shackles after his surgery

when he got back to his room and rose from the gurney to get into bed. (Complaint at 18-19). The underwear remained locked in the shackles for "several hours" until Plaintiff asked to be unlocked from the bed to use the restroom. After explaining to the guard why he could not pull up his underwear, the guard unlocked his leg shackles to allow Plaintiff to replace the underwear at his waist. (Id. at 19). In sum, Plaintiff alleges that his underwear was locked at his ankles for a few hours immediately following surgery while he was wearing a hospital gown and resting in bed in a private room. Even if "his private body parts were without underwear" for that brief period, Plaintiff's body was covered by a hospital gown and presumably, a blanket. Underwear deprivation in hospital is not "sexual abuse," but a common experience. Schwenk, 204 F.3d at 1197. Accordingly, the Complaint must be dismissed, with leave to amend.

**D.  Plaintiff Fails To State A Claim For Deliberate Indifference To Serious Medical Needs Against LVMC Or Its Employees**

**1.  Plaintiff Fails To State A Claim Against LVMC**

Plaintiff alleges in part that LVMC is liable "vicariously" for the actions of "[p]ublic employees DOE Defendants 9 through 20 and ROE Defendants 2 though 20 . . . ."[7] (Complaint at 13). However, a local government is liable in a section 1983 action

---

[7] Although Plaintiff does not clearly allege that LVMC is a county medical facility, the Court assumes, without deciding, that LVMC is operated by Santa Barbara County.

only if the plaintiff can establish that the municipality or county sued "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." Galen v. County of Los Angeles, 477 F.3d 652, 667 (9th Cir. 2007) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694-95 (1978)). In Monell, the Supreme Court specifically rejected governmental liability based on the doctrine of respondeat superior, or vicarious liability. Monell, 436 U.S. at 691-94. Therefore, a local government cannot be held liable under section 1983 merely because one or more of its employees violated a person's rights. Id.

However, even to the extent that Plaintiff generally alleges that LVMC had "an ongoing [and] longstanding practice" of applying unreasonable and excessive restraints, Plaintiff fails to state a claim. (Complaint at 12). Plaintiff specifically alleges that DOE Defendants 1 and 2, his federal escorts, "shackled Plaintiff to the metal bedframe" in his hospital room. (Id. at 14). Plaintiff further alleges that DOE Defendants 1-8 and ROE Defendant 1, all part of Plaintiff's escort detail, "applied unreasonable and unnecessary restraints." (Id. at 12). Plaintiff has also alleged that the only individuals who had keys to the shackles on his legs were his prison escorts. (Id. at 30). Nowhere in the Complaint does Plaintiff state that LVMC ordered that Plaintiff be shackled or applied any restraints on him at all. Furthermore, it was the BOP, not the hospital, that was responsible for making sure that Plaintiff did not escape or harm his medical providers, which was the obvious reason

1    Plaintiff was shackled while he was outside the prison.
2    Accordingly, the Complaint must be dismissed, with leave to
3    amend.

4

5         **2.    Plaintiff Fails To State A Claim For Deliberate**
6              **Indifference To Serious Medical Needs**

7

8         Plaintiff alleges that LVMC, Dr. Gill, DOE Defendants 9-20
9    and ROE Defendants 2-20, whom he generally identifies as LVMC
10   employees, were "deliberately indifferent" to his medical needs
11   because they applied excessive restraints (LVMC, DOE and ROE
12   Defendants), kept him in a drug-induced state (same), and
13   "committed sexual abuse" upon him (Dr. Gill, DOE and ROE
14   Defendants). (Id. at 13). Deliberate indifference to serious
15   medical needs of prisoners violates the Eighth Amendment. West
16   v. Atkins, 487 U.S. 42, 49 (1988). A prisoner must show that he
17   was confined under conditions posing a risk of "objectively,
18   sufficiently serious" harm and that the officials had a
19   sufficiently culpable state of mind in denying the proper medical
20   care. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).
21   There must be a purposeful act or failure to act on the part of
22   the official resulting in harm to Plaintiff. See Jett v. Penner,
23   439 F.3d 1091, 1096 (9th Cir. 2006). "A defendant must
24   purposefully ignore or fail to respond to a prisoner's pain or
25   possible medical need in order for deliberate indifference to be
26   established." May v. Baldwin, 109 F.3d 557, 566 (9th Cir. 1997)
27   (internal quotation marks omitted).

28

1    To the extent that Plaintiff's deliberate indifference claim

2 is based on his excessive restraint allegations, the Complaint

3 fails to state a claim for the reasons discussed immediately

4 above.  Plaintiff does not allege that county actors ordered or

5 applied restraints, and it is doubtful that Plaintiff can do so

6 credibly.  Plaintiff further fails to state a deliberate

7 indifference claim to the extent that it is based on the

8 administration of painkillers before and after Plaintiff's

9 operation.  First, the painkillers obviously relieved, not

10 inflicted, pain.  Second, Plaintiff presented with a broken wrist

11 and then had surgery to repair his wrist.  It is clear that pain

12 medication would be warranted in such a situation, and indeed,

13 Plaintiff does not allege that he indicated in any way that he

14 did not want pain medication.  Third, Plaintiff fails to state

15 with any specificity at all what any particular DOE or ROE

16 Defendant did.  See Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir.

17 2011) (to demonstrate a civil rights violation against government

18 officials, a plaintiff must show either direct, personal

19 participation in or some sufficient causal connection between the

20 officials' conduct and the alleged constitutional violation).

21

22    For the same reasons, the deliberate indifference claim

23 fails to the extent that it is based on the allegations of sexual

24 abuse.  Plaintiff alleges that Dr. Gill, DOE Defendant 9 (the

25 anesthesiologist), and ROE Defendants 2-4 (the "circulator," the

26 "relief," and the "scrub," respectively) were in the operating

27 room, but specifically alleges that only Lewis and DOE Defendant

28 4 were the escorts with the keys to his shackles, and,

presumably, knew what Plaintiff's "crime of conviction" was.  The Complaint fails to state specifically what Plaintiff believes the section 1983 Defendants may have done to sexually abuse Plaintiff.  Even if he had, to state a deliberate indifference claim, Plaintiff must allege that each specific defendant was subjectively aware of his serious medical needs and consciously chose to ignore them.  Plaintiff merely alleges that his underwear was removed during surgery, not that a serious medical need was ignored.  Accordingly, the Complaint must be dismissed, with leave to amend.

**E.    The Complaint Fails To Satisfy Rule 8**

As previously noted, Rule 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Twombly, 550 U.S. at 555.  Rule 8(e)(1) instructs that "[e]ach averment of a pleading shall be simple, concise, and direct."  A complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint.  Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1059 (9th Cir. 2011).

Plaintiff's lengthy, repetitive and sometimes rambling Complaint does not comply with Rule 8.  The Complaint contains many instances of unnecessary and irrelevant allegations.  For example, the Complaint includes:

18

- allegations about prosecutorial misconduct during plea and sentencing proceedings that have no bearing at all on Plaintiff's sexual abuse allegations (Complaint at 20);

- Plaintiff's personal affidavit, which largely repeats the allegations in the Complaint and is procedurally improper (id. at 25-28);[8]

- affidavits of nonparty witnesses (pages 45-48) and a list of witnesses "under seal" even though Plaintiff is not required to present evidence at this stage of the proceedings (id., Exh. G);

- irrelevant allegations about plaintiff's good disciplinary record, which has nothing to do with alleged constitutional violations (id. at 18);

- improper offers to "dismiss" certain Defendants upon receipt of an affidavit inculpating others and a lack of clarity as to whether Saber, Lipazana, Hernandez, and Wallace are in fact named as defendants (id. at 6); and

---

[8] "Affidavits and declarations . . . are not allowed as pleading exhibits unless they form the basis of the complaint." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); see also DeMarco v. DepoTech Corp., 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001) (affidavit "clearly does not form the basis" of Plaintiff's claims when "it is merely a piece of evidentiary matter that does not exist independently of the complaint"). Here, Plaintiff's "personal declaration" does not form the basis of the Complaint. Thus, it is improperly submitted with the Complaint.

- unnecessary case cites, summaries of legal standards, and
  citations to various federal and state laws and regulations
  (id. at 8-9, 12-13).

Plaintiff is once again reminded that he is required to give only
a short and plain statement of his claims and the essential facts
supporting them.   Accordingly, the Complaint must be dismissed,
with leave to amend.

**IV.**

**CONCLUSION**

     For  the  reasons  stated  above,  the  Court  dismisses  the
Complaint  with  leave  to  amend.    If  Plaintiff  still  wishes  to
pursue  this  action,  he  is  granted  **thirty  (30)  days**  from  the  date
of  this  Memorandum  and  Order  within  which  to  file  a  First  Amended
Complaint  that  cures  the  defects  described  above.    **Plaintiff**
**shall  not  include  new  defendants  or  new  allegations  that  are  not**
**reasonably  related  to  the  claims  asserted  in  the  original**
**complaint.**    The  First  Amended  Complaint,  if  any,  shall  be
complete  in  itself  and  shall  bear  both  the  designation  "First
Amended  Complaint"  and  the  case  number  assigned  to  this  action.
It  shall  not  refer  in  any  manner  to  any  previously  filed
complaint  in  this  matter.

     In  any  amended  complaint,  Plaintiff  should  confine  his
allegations  to  those  operative  facts  supporting  each  of  his
claims.    Plaintiff  is  advised  that  pursuant  to  Federal  Rule  of

20

Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should make clear what specific factual allegations give rise to his claims. Plaintiff is advised to omit any claims for which he lacks a sufficient factual basis.

Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and/or failure to obey Court orders pursuant to Federal Rule of Civil Procedure 41(b). **Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.**

DATED:  June 27, 2014

                                         /S/
                              _____
                              SUZANNE H. SEGAL
                              UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**