1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   GLENN BOSWORTH,                  Case No. CV 14-0498 DMG (SS)

12              Plaintiff,
                                      **MEMORANDUM DECISION AND ORDER**
13        v.
                                      **DISMISSING FIRST AMENDED**
14   UNITED STATES OF AMERICA, et
     al.,                             **COMPLAINT WITH LEAVE TO AMEND**
15
              Defendants.
16

17                                    **I.**

18                              **INTRODUCTION**

19

20        On January 22, 2014, Plaintiff, a federal prisoner

21   proceeding pro se, filed a civil action under the Federal Tort

22   Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq.; Bivens v.

23   Six Unknown Named Agents, 403 U.S. 388 (1971); and 42 U.S.C.

24   § 1983.  The Court subsequently dismissed the Complaint with

25   leave to amend due to various pleading defects.[1]  On July 28,

26

27   _____

     [1] Magistrate judges may dismiss a complaint with leave to amend
28   without approval of the district judge.  See McKeever v. Block,
     932 F.2d 795, 795 (9th Cir. 1991).

2014, Plaintiff filed a First Amended Complaint ("FAC"). For the reasons stated below, the FAC is dismissed with leave to amend.

Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee. 28 U.S.C. § 1915A(a). This Court may dismiss such a complaint, or any portions thereof, before service of process if it concludes that the complaint (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1-2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc).

## II.

### FACTUAL ALLEGATIONS AND CLAIMS

Plaintiff names as Defendants (1) the United States of America; (2) the Lompoc Valley Medical Center ("LVMC"); FCI-Lompoc employees (3) physician Richard Gross, (4) Health Information Technician Valerie Ericksen, (5) counselor Baltazar Magana,[2] and (6) correctional officer E. Lewis; (7) the FCI-Lompoc correctional officers assigned to Plaintiff's medical escort detail when he was hospitalized in April 2012, identified as DOE Defendants 1-7 and ROE Defendant 1; and (8) "employees of

---

[2] Although the caption of the FAC does not include Magana among its list of Defendants, he is named in the body of the FAC. (FAC at 3).

2

the public entity Defendant LVMC who were present during plaintiff's hospitalization," identified as DOE Defendants 8-10 and ROE Defendants 2-10. (FAC at 4).[3] (FAC at 2-4). Gross, Ericksen, Magana and Lewis are sued in their individual capacities only. (Id. at 3).

Plaintiff states that two days after suffering a "serious injury" to his left wrist, he was taken to LVMC, where he underwent a "surgery procedure." (Id. at 8-9). Plaintiff was shackled on both arms and both legs en route to the hospital. (Id. at 8).

At the hospital, Plaintiff was admitted to a private room where he was ordered to change clothes and lie down on the bed. (Id.). Shackles were applied to both legs and his uninjured right arm "in a manner that forced [Plaintiff] to lie in a fixed, prone position with no ability to move any extremity in any manner whatsoever." (Id.). LVMC employees watched and consented to the use of the hospital bed "to excessively restrain" Plaintiff. (Id.). These shackles remained in place from approximately 8:00 p.m. on April 10, 2012 until 8 p.m. on April 11, 2012. (Id. at 9). LVMC has a policy of "excessively shackling inmate/patients to their beds during inmates' hospitalizations . . . ." (Id.). Plaintiff was shackled even though "he posed no threat or danger to anyone . . . ." (Id.).

---

[3] Plaintiff states that DOE Defendants 8-10 and ROE Defendants 2-10 "may include" C. Saber, J. Lipazana, C. Hernandez, and E.R. Wallace. However, the FAC appears to stop short of actually naming them as Defendants. (FAC at 4).

1    Plaintiff's left arm injury has not healed since his
2    surgery.  (Id.).  Around November 20, 2012, Plaintiff was
3    diagnosed with Reflex Sympathetic Dystrophy.  (Id. at 10).
4    However, Plaintiff was not examined by a neurologist until April
5    8, 2014, approximately a year and a half after his Reflex
6    Sympathetic Dystrophy diagnosis.  (Id.).  By that time, Plaintiff
7    suffered "additional degenerative conditions including physical
8    deformity and loss of functional use of his left hand, fingers,
9    wrist and arm."  (Id.).  The treatment recommended by the
10   neurologist has not yet been provided.  (Id.).

12   Plaintiff states that his underwear was unlawfully removed
13   by force and interwoven through his leg shackles.  (Id. at 10-
14   11).  However, the FAC does not state when, where, or why his
15   underwear was removed.

17   Finally, Plaintiff alleges that when he arrived at FCI-
18   Lompoc in January 2011, he was approved for semi-annual
19   examinations and treatment from a dermatologist "for his known
20   serious medical need of skin cancer and melanoma."  (Id.).
21   However, Plaintiff has been examined by a dermatologist only
22   three times since his arrival, in March and September 2011 and
23   April 2012.  (Id.).  Plaintiff has "not been provided any
24   treatment for his serious skin cancer since April 13,
25   2012 . . . ."  (Id.).  Plaintiff argues that the failure to
26   provide regular dermatological treatment poses an "increased risk
27   of a recurrence of melanoma."  (Id.).  It is unclear whether
28   Plaintiff is alleging that his skin cancer has actually returned.

4

The FAC raises seven claims.  In Claim One, Plaintiff alleges that the United States is liable under the FTCA for assault and battery as a result of his being shackled in a "fixed, spread eagle position" to his hospital bed for twenty-four hours.  (Id. at 6).  In Claim Two, also brought under the FTCA, Plaintiff alleges that the removal of his underwear constitutes sexual battery because it inflicted a "harmful or offensive contact with Plaintiff's genitals." (Id.).  In Claim Three, Plaintiff claims that Magana, Lewis, DOE Defendants 1-7 and ROE Defendant 1 violated his Eighth Amendment rights by shackling him to his hospital bed.  (Id.)  In Claim Four, Plaintiff states that Lewis and DOE Defendants "4 and/or 8" violated the Eighth Amendment by pulling down his underwear in violation of the BOP's Zero Tolerance Policy and 42 U.S.C. § 1395, which Plaintiff believes precludes "any Federal Officer or employee from participating in any manner, [sic] in a medical procedure." (Id. at 6 & 11).

In Claim Five, Plaintiff states that Dr. Gross was deliberately indifferent to his serious medical needs because Plaintiff was not examined or treated by a neurologist for sixteen months after being diagnosed with Reflex Sympathetic Dystrophy and still has not been provided with the neurologist's recommended (though unidentified) treatment.  (Id. at 7).  In Claim Six, Plaintiff contends that Dr. Gross "and/or" Health Information Technician Ericksen were deliberately indifferent to his serious medical needs because Plaintiff has not been examined by a dermatologist for 28 months to check on his "known serious

medical needs of skin cancer and/or melanoma." (Id. at 7).
Finally, in Claim Seven, Plaintiff states that Magana, Lewis, DOE
Defendants 1-7, ROE Defendant 1, and LVMC violated his due
process rights by preventing "his freedom of bodily movement"
when he was shackled to his hospital bed. (Id.).

Plaintiff seeks $500,000 each in compensatory damages for
his FTCA claims alleging assault and battery and sexual battery
(Claims One and Two). (Id. at 12). Plaintiff also seeks
$500,000 each for his civil rights claims alleging excessive
force and sexual abuse (Claims Three and Four). (Id.).
Plaintiff seeks $2,500,000 for his deliberate indifference claim
relating to the alleged delay in treating his Reflex Sympathetic
Dystrophy (Claim Five). (Id.). The copy of the FAC filed with
the Court is missing page 13, so the Court is unable to discern
what damages, if any, Plaintiff is seeking for his deliberate
indifference claim relating to the delay in examining his
melanoma (Claim Six) and his "freedom of bodily movement" due
process claim (Claim Seven). (See id. at 12-14). Plaintiff
seeks $1,000,000 in punitive damages for his civil rights claims.
(Id. at 14).

## III.

## DISCUSSION

The Court finds that the FAC must be dismissed due to myriad
pleading defects too numerous to address in detail. However, pro
se litigants in civil rights cases must be given leave to amend

their complaints unless it is absolutely clear that the deficiencies cannot be cured by amendment. See Lopez, 203 F.3d at 1128-29. Accordingly, the Court dismisses the FAC with leave to amend, as further explained below.

**A.    The Complaint Fails To Satisfy Rule 8**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rule 8(e)(1) instructs that "[e]ach averment of a pleading shall be simple, concise, and direct." A complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint. Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1059 (9th Cir. 2011).

Although Rule 8's "notice pleading" requirements are "minimal," Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008), a plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As the Ninth Circuit has explained,

1    Plausibility requires pleading facts, as opposed to
2    conclusory allegations or the "formulaic recitation of
3    the elements of a cause of action," Twombly, 550 U.S.
4    at 555, 127 S. Ct. 1955, and must rise above the mere
5    conceivability or possibility of unlawful conduct that
6    entitles the pleader to relief, Iqbal, 556 U.S. at
7    678-79, 129 S. Ct. 1937. "Factual allegations must be
8    enough to raise a right to relief above the
9    speculative level." Twombly, 550 U.S. at 555, 127 S.
10   Ct. 1955. "Where a complaint pleads facts that are
11   merely consistent with a defendant's liability, it
12   stops short of the line between possibility and
13   plausibility of entitlement to relief." Iqbal, 556
14   U.S. at 678, 129 S. Ct. 1937 (citation and quotes
15   omitted); accord Lacey v. Maricopa Cnty., 693 F.3d
16   896, 911 (9th Cir. 2012) (en banc).

17

18   Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013); see
19   also Iqbal, 556 U.S. at 679 (plausibility determination is "a
20   context-specific task that requires the reviewing court to draw
21   on its judicial experience and common sense"); Hemmings v.
22   Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998) (district court "did
23   not abuse its discretion by refusing to indulge [prisoner
24   plaintiff's] fanciful allegations" regarding "wide-ranging
25   conspiracies, clearly without foundation, to violate his
26   constitutional rights").
27   \\
28   \\

1    Pro se pleadings are to be liberally construed and are held
2    to a less stringent standard than those drafted by a lawyer.
3    Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).  However, the
4    court does not have to accept as true mere legal conclusions.
5    See Iqbal, 556 U.S. at 664.  Furthermore, in giving liberal
6    interpretation to a pro se complaint, the court may not supply
7    essential elements of a claim that were not initially pled.  Pena
8    v. Gardner, 976 F.2d 469, 471-72 (9th Cir. 1992).

9

10   Here, all of Plaintiff's claims violate Rule 8 because they
11   give no notice to Defendants of what Plaintiff believes they
12   specifically did that harmed him, and in most instances, who he
13   believes performed the wrongful act.  Plaintiff must provide
14   "more than labels and conclusions" to satisfy even the minimal
15   pleading standard under the Federal Rules.  Twombly, 550 U.S. at
16   555.  For example, in his claims alleging unlawful shackling
17   (assault and battery, excessive force, and "restraint on bodily
18   movement"), Plaintiff does not state whether individual
19   Defendants are liable because they put shackles on Plaintiff or
20   because they did not remove them, and does not clearly explain
21   what about the particular way he was shackled caused him harm, if
22   any.  (FAC at 6-7).  Additionally, in his sexual battery and
23   sexual abuse of a ward claims, Plaintiff appears to allege that
24   Lewis violated his constitutional rights by pulling down
25   Plaintiff's underwear and locking them to his ankles.  (Id. at
26   6).  However, the FAC provides absolutely no details about where,
27   when, under what circumstances and for what purpose Lewis and the
28   DOE and ROE Defendants allegedly committed this act.  Plaintiff

also does not explain why, in the context of that specific situation, Plaintiff believes the removal of his underwear violated his rights.   Similarly, Plaintiff baldly states that Gross and Ericksen were deliberately indifferent to his serious medical needs, but does not explain at all what role they had in providing health care to Plaintiff, when and how they learned about his serious medical needs, and what they specifically did or did not do after being armed with that knowledge that put Plaintiff's health at serious risk.   (Id. at 7).

To satisfy Rule 8, Plaintiff must identify each Defendant, including each DOE and ROE Defendant by number, who he believes is liable for each claim and describe in a short and plain statement what he contends each Defendant specifically did.   The FAC's conclusory allegations do not give Defendants notice of the claims against them.   Accordingly, the FAC is dismissed, with leave to amend.

**C.**   **Plaintiff's Allegations Of "Excessive Restraints" Fail To State A Claim**

Plaintiff repeatedly, and formulaically, alleges that Defendants applied "excessive" restraints "with no medical nor penological need therein" by shackling both of his legs and his uninjured right arm to his hospital bed, such that Plaintiff was forced to lie in a fixed, spread eagle position.   (FAC at 6). Plaintiff appears to argue that shackling in any manner was unwarranted because "there existed other reasonable options" to

shackling and "under the medical circumstances in this case, he posed no threat or danger to anyone, there was no prior disturbance to quell, nor was there any immediate nor foreseeable threat of any pending disturbance to quell." (Id. at 9). According to Plaintiff, the "excessive" shackling constituted assault and battery under the FTCA and violated both his Eighth Amendment right to be free from excessive force and his Fifth Amendment due process right to "freedom of bodily movement." (Id. at 7). However, the FAC's allegations of "excessive restraint" fail to state a claim under any of these causes of action.

### 1.   <u>Assault and Battery (FTCA)</u>

Plaintiff's first excessive restraint claim alleges a cause of action for assault and battery. Under California law,

> The elements of a cause of action for assault are:
> (1) the defendant acted with intent to cause harmful
> or offensive contact, or threatened to touch the
> plaintiff in a harmful or offensive manner; (2) the
> plaintiff reasonably believed he was about to be
> touched in a harmful or offensive manner or it
> reasonably appeared to the plaintiff that the
> defendant was about to carry out the threat; (3) the
> plaintiff did not consent to the defendant's conduct;
> (4) the plaintiff was harmed; and (5) the defendant's
> conduct was a substantial factor in causing the

plaintiff's harm.   The elements of a cause of action for battery are: (1) the defendant touched the plaintiff, or caused the plaintiff to be touched, with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by the defendant's conduct; and (4) a reasonable person in the plaintiff's position would have been offended by the touching.

Carlsen v. Koivumaki, 227 Cal. App. 4th 879, 890 (2014) (internal citations omitted).

To the extent that Plaintiff's claim is based merely on the fact that he was shackled at all, the FAC fails to state a claim for assault or battery.   Plaintiff is a convicted felon with several years left to serve on his sentence and was taken to a public hospital outside the prison, where there was an obvious risk of escape or harm to others, despite Plaintiff's injured left hand.   The mere fact that Plaintiff was shackled under these circumstances does not state a claim for assault because it does not show that Defendants acted with intent to harm.   Allegations of the mere fact of shackling also do not state a claim for battery, both because they do not show that Defendants acted with intent to harm and because a reasonable person in Plaintiff's position as a convicted felon receiving treatment outside of prison would not have been offended by the shackling.

It is unclear whether Plaintiff is attempting to argue that he was harmed not just because he was put in shackles but also because of the manner in which the shackles were applied. Plaintiff states that due to the shackles, he was put in a "fixed, spread eagle" position for the twenty-four hours he was in hospital. (FAC at 6). This cursory allegation does not provide enough information for the Court to determine if Defendants applied the shackles in such a way as to show an intent to harm and an offensive touching. It is obvious that shackles would restrict Plaintiff's ability to move freely. Conclusory allegations that the application of shackles was "malicious" and "sadistic" do not suffice to make that showing. Accordingly, the FAC fails to state a claim for assault and battery.

**2.   Eighth Amendment Cruel And Unusual Punishment (Bivens)**

The Eighth Amendment governs an inmate's excessive force claim against prison officials. In such a claim, the relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Courts considering a prisoner's Eighth Amendment claim "must ask both if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Id. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). It is well established that the use of shackles to restrain a prisoner, by

itself, does not violate the Eighth Amendment.  LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (requiring prisoner to shower while shackled is not cruel and unusual punishment where "the purpose of the restraints is not to injure [plaintiff] or make it difficult for him to shower, but . . . to protect staff").

    The FAC alleges that Plaintiff was shackled, but does not allege facts showing that Defendants put Plaintiff in shackles for the purpose of harming him.  The mere fact that Plaintiff was shackled the entire time he was outside the prison in a public hospital does not, by itself, establish that Defendants acted with a "culpable state of mind."  Furthermore, as pled, Plaintiff's Eighth Amendment claim does not show that the shackling was "objectively harmful."  Hudson, 503 U.S. at 7. Plaintiff alleges that he was in hospital for approximately 24 hours.  (FAC at 9).  Plaintiff was likely not awake for a significant percentage of that time because he was either asleep or under sedation.  Plaintiff does not allege that the shackles caused him great pain or even bruises.  At most, Plaintiff appears to allege that the shackles were uncomfortable and unnecessary.  Accordingly, the FAC fails to state an Eighth Amendment claim.

    **3.   Fifth Amendment "Restraint On Bodily Movement" Due Process Claim (Bivens)**

    Plaintiff also argues that the shackles denied him "freedom of bodily movement in violation of his due process protections

under the Fifth Amendment." (Id. at 7). To assert a due process claim, a plaintiff must identify the deprivation of a protected interest. Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz., 24 F.3d 56, 62 (9th Cir. 1994) ("A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (emphasis added). The government, "pursuant to its police power, may of course imprison convicted criminals for the purposes of deterrence and retribution." Id. However, the liberty interest in freedom from arbitrary bodily restraint by the government "survives criminal conviction and incarceration." Youngberg v. Romeo, 457 U.S. 307, 316 (1982). A restraint violates due process when it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff has not shown that the use of shackles in his specific case constituted an "atypical and significant hardship." "The use of shackles and handcuffs are restraints commonly used on inmates, even those of a preferred status." Jackson v. Cain, 864 F.2d 1235, 1244 (5th Cir. 1989). Plaintiff does not allege that shackles are not customarily used on prisoners when they are taken to outside medical facilities for treatment, and likely cannot plausibly do so. See Odell v. Litscher, 2003 WL 23282749

15

at *4 (W.D. Wis. Jan. 6, 2003) ("[T]he fact that respondents shackled petitioner in public and allowed guards to remain in the room during medical exams is not an atypical or significant hardship in relation to the ordinary incidents of prison life."). Nor does Plaintiff allege facts showing that the specific way in which shackles were applied to him was atypical or caused him "significant hardship." Accordingly, the FAC fails to state a due process claim.

Because Plaintiff's "excessive restraint" claims all fail to state a claim, the FAC is dismissed with leave to amend. Plaintiff is strongly cautioned that he may not raise claims for which he does not have a legal or factual basis.

**D.    Plaintiff Does Not State A Claim For Sexual Battery Or Sexual Abuse**

**1.    Sexual Battery (FTCA)**

As the Court has previously explained, under the FTCA, "a court must look to state law for the purpose of defining the actionable wrong for which the United States shall be liable . . . ." United States v. Park Place Assoc., Ltd., 563 F.3d 907, 922 (9th Cir. 2009) (internal quotation marks omitted); see also 28 U.S.C. § 1346(b). To state a claim, a plaintiff "must show the government's actions, if committed by a private party, would constitute a tort" under state law. Love v. United States, 60 F.3d 642, 644 (9th Cir. 1995). Under California law, a person

commits sexual battery when he "[a]cts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results."  Cal. Civ. Code § 1708.5(a)(1); see also Shanahan v. State Farm General Ins. Co., 193 Cal. App. 4th 780, 788 (2011) ("[T]he tort of sexual battery requires an intent to cause a harmful or offensive contact.") (internal quotation marks omitted; brackets in original).

     As discussed above, the FAC does not give any details at all about when, where or why Plaintiff's underwear was removed.  (See FAC at 10-11).  Plaintiff's conclusory allegations that his underwear was "unlawfully removed . . . with no medical or penological need or justification" (id. at 10) do not show facts that would enable the Court to determine whether this claim meets the plausibility standard.  See Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) ("The plaintiff must allege facts, not mere legal conclusions, in compliance with the pleading standards established by [Iqbal and Twombly].")  However, if Plaintiff is contending that the removal took place while he was in hospital, Plaintiff is cautioned that allegations concerning the removal of a patient's underwear in connection with a surgical procedure, without more, do not state a claim for sexual battery.[4]

---

[4] The original Complaint provided some context to the incident, even though it, too, failed to state a claim.  In the Complaint, Plaintiff alleged that he discovered that his underwear had been removed when he returned to his hospital room following his operation.  (Complaint at 18-19).  The Court concluded that these allegations failed to state a claim because it is common practice for a patient's underwear to be removed so that a catheter can be inserted when a patient is under sedation.  The omission of these

Furthermore, the fact that Plaintiff's underwear was woven through his leg shackles does not support a tort claim for sexual battery, which requires a harmful or offensive and unwanted intentional touching of an intimate part of a person's body. Cal. Civ. Code § 1708.5(a)(1). Accordingly, the FAC does not state a claim for sexual battery.

### 2.   **Sexual Abuse Of A Ward (Bivens)**

In his "sexual abuse of a ward" claim, Plaintiff argues that the removal of his underwear violated the BOP's Zero Tolerance Policy and 42 U.S.C. § 1395. The mere violation of a prison regulation, which the FAC does not identify, without more, does not state a claim under Bivens. See Clemente v. United States, 766 F.2d 1358, 1364 (9th Cir. 1985) (agency's violation of its own regulation does not ordinarily provide the basis for a constitutionally cognizable claim as "[t]o hold otherwise would immediately incorporate virtually every regulation into the Constitution"); see also Arcoren v. Peters, 829 F.2d 671, 676-77 (8th Cir. 1987) (violation of a regulation does not suffice under Bivens unless the regulation supplies the basis for a claim of a constitutional right).

\\

\\

\\

---

and other allegations from Plaintiff's FAC not only renders the pleading conclusory and insufficient to state a claim, but also suggests that Plaintiff is attempting to manipulate the facts to state a claim where one might not otherwise exist.

18

It is unclear why Plaintiff believes that 42 U.S.C. § 1395, the opening provision of the Medicare Act, is relevant to his claims.  It provides:

> Nothing in this subchapter shall be construed to authorize any Federal officer or employee to exercise any supervision or control over the practice of medicine or the manner in which medical services are provided, or over the selection, tenure, or compensation of any officer or employee of any institution, agency, or person providing health services; or to exercise any supervision or control over the administration or operation of any such institution, agency, or person.

Section 1395 of the Medicare Act expresses the intent of Congress not to preempt the entire field of regulating the provision of medical care to the elderly and disabled.  See Medical Soc'y of State of New York v. Cuomo, 976 F.2d 812, 818 (2d Cir. 1992); see also Penn. Med. Soc'y v. Marconis, 942 F.2d 842, 849 (3d Cir. 1991) (the Medicare Act did not preempt state legislation regulating medical billing practices).  The Medicare Act is irrelevant to Plaintiff's claims.  Accordingly, the FAC does not state a claim for sexual abuse.

Plaintiff's allegations regarding the removal of his underwear as pled in the FAC are fatally vague and fail to state a claim.  Although the Court is skeptical that Plaintiff will be

19

able to state a claim based on this incident if his underwear was removed simply in connection with his operation, pro se litigants in civil rights cases must be given leave to amend their complaints unless it is absolutely clear that the deficiencies cannot be cured by amendment. See Lopez, 203 F.3d at 1128-29. Accordingly, the FAC is dismissed, with leave to amend.

**E.   Plaintiff Fails To State A Claim For Deliberate Indifference To Serious Medical Needs (Bivens)**

Plaintiff alleges that Dr. Gross was deliberately indifferent to his medical needs because there was an alleged delay before Plaintiff was examined by a neurologist to treat his Reflex Sympathetic Dystrophy. (FAC at 7). Plaintiff also alleges that Dr. Gross "and/or" Health Information Technician Erickson were deliberately indifferent to his "skin cancer and/or melanoma" because it has been 28 months since Plaintiff was last examined by a dermatologist. (Id.). To state a claim for deliberate indifference to serious medical needs, a prisoner must show that he was confined under conditions posing a risk of "objectively, sufficiently serious" harm and that the officials had a sufficiently culpable state of mind in denying the proper medical care. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). There must be a purposeful act or failure to act on the part of the official resulting in harm to Plaintiff. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be

1    established."  <u>May v. Baldwin</u>, 109 F.3d 557, 566 (9th Cir. 1997)

2    (internal quotation marks omitted).

3

4         As stated in Part III.A, Plaintiff fails to state a claim

5    against Defendants Gross or Erickson because he does not explain

6    how and when they learned of his serious medical condition or

7    what they did after learning of that condition that caused

8    Plaintiff harm.  The mere fact that medical treatment was

9    delayed, without showing the role Defendants had in causing that

10   delay and the harm resulting from the delay, does not state a

11   claim for deliberate indifference.  Accordingly, the Complaint

12   must be dismissed, with leave to amend.

13

14   **F.   <u>The FAC Does Not State A Claim Against LVMC Or Its Employees</u>**

15

16        According to the FAC, DOE Defendants 8-10 and ROE Defendants

17   2-10 are LVMC employees who "were present during Plaintiff's

18   hospitalization."  (FAC at 4).  Plaintiff alleges that the LVMC

19   Defendants violated his due process right to be free of arbitrary

20   bodily restraints because they "stood by, watching, and consented

21   to the use of the LVMC bed upon which to excessively restrain him

22   [sic], and prevented his freedom of bodily movement."  (<u>Id.</u> at

23   7).  Plaintiff also summarily alleges that "LVMC has an ongoing,

24   longstanding policy and/or patter of [sic] practice of

25   excessively shackling inmate/patients to their beds during

26   inmates' hospitalizations . . . ."  (FAC at 9).  These

27   allegations fail to state a claim.

28

Plaintiff does not show the personal participation of any DOE or ROE Defendant in the alleged violation, except to note that they observed that Plaintiff was shackled to a hospital bed and failed to intervene.  See Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) (requiring "sufficient allegations of underlying facts" showing the involvement of each defendant in the constitutional violation to state a claim).  Furthermore, it is doubtful that any LVMC employee would have had the authority to order the removal of Plaintiff's shackles because the BOP, not the hospital, was ultimately responsible for ensuring that Plaintiff did not escape or harm anyone while outside the prison.  Plaintiff's conclusory allegation that LVMC has a policy or practice of excessively shackling prisoner patients fails because Plaintiff has failed to allege any facts showing that LVMC participated in any constitutional violation.  Nowhere in the FAC does Plaintiff show how LVMC -- as opposed to the BOP -- exercised any custodial control over him.  Accordingly, Plaintiff's claims against LVMC and its employees must be dismissed, with leave to amend.

**IV.**

**CONCLUSION**

Plaintiff has already had two opportunities to state a claim in this action based on his hospitalization and health care at FCI-Lompoc.  The Court will grant Plaintiff one more opportunity to state a non-frivolous claim that is supported by facts and not merely by legal conclusions.  The Court advises Plaintiff that in

light of the many largely baseless multi-claim actions he has filed in this Court, and the numerous frivolous motions that Plaintiff has filed in those actions,[5] Plaintiff appears to be

---

[5] Plaintiff filed four civil complaints alleging Bivens and Federal Tort Claims Act claims and two habeas petitions within a one-year period in this Court, all of which are still pending. (See Bosworth v. United States, EDCV 13-0348 DMG (SS) (FTCA claims, filed February 25, 2013); Bosworth v. Escalante, CV 13-2924 DMG (SS) (Bivens claims, filed April 25, 2013; Bosworth v. United States, CV 13-8352 ODW (section 2255 habeas petition, filed November 12, 2013); Bosworth v. United States, CV 14-0283 DMG (SS) (FTCA and Bivens claims, filed January 13, 2014); Bosworth v. United States, CV 14-0498 DMG (SS) (FTCA and Bivens claims, filed January 22, 2014), and Bosworth v. Ives, CV 14-1089 DMG (SS) (section 2241 habeas petition, filed February 12, 2014)). In Escalante, the undersigned Magistrate Judge issued a Report and Recommendation recommending that the action be dismissed with prejudice for failure to state a claim. (Escalante, CV 13-2924, Dkt. No. 37). In another case challenging the validity of Petitioner's plea and conviction, the Court issued an Order to Show Cause Why Plaintiff's Claims Are Not Barred By Heck v. Humphrey, 512 U.S. 477 (1994). (See Bosworth, CV 14-0283, Dkt. No. 3).

Plaintiff has filed numerous frivolous motions in connection with these cases. Indeed, in just one of Plaintiff's pending actions, the Court has denied over ten baseless or unnecessary motions. (See, e.g., Bosworth v. U.S.A., EDCV 13-0348 DMG (SS), Dkt. No. 9 (order denying request for status update); Dkt. No. 13 (order denying motion to require BOP to grant Plaintiff access to LEXIS); id., Dkt. 14 (order denying request for complete copy of local rules); id., Dkt. No. 31 (order denying request for default judgment); id., Dkt. No. 46 (order denying motion for order requiring FCI-Lompoc to provide deposition facilities for failure to properly serve deposition notices); id., Dkt. No. 47 (order denying Plaintiff's motion for "cease and desist" order); id., Dkt. No. 56 (order denying Plaintiff's motion to compel discovery responses for failure to identify contents of requests at issue); id., Dkt. No. 58 (order denying Plaintiff's motion for protective order); id., Dkt. No. 69 (order denying Plaintiff's motion to compel supplemental answers to interrogatories, requests for admission, and production of documents); id., Dkt. No. 80 (order denying request for entry of default)).

abusing the legal process and is usurping a disproportionate share of the Court's resources that could be spent on other matters. The continued assertion of non-cognizable or unsupported claims in this action in disregard of the Court's instructions is likely to result in a recommendation that Plaintiff be deemed a vexatious litigant.

For the reasons stated above, however, the Court dismisses the FAC with leave to amend. If Plaintiff still wishes to pursue this action, he is granted **thirty (30) days** from the date of this Memorandum and Order within which to file a Second Amended Complaint that cures the defects described above. **Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the original complaint. If Plaintiff includes new claims or unrelated allegations, such claims or allegations will be striken and may result in the dismissal of the action entirely. Plaintiff shall only include properly exhausted claims.** The Second Amended Complaint, if any, shall be complete in itself and shall bear both the designation "Second Amended Complaint" and the case number assigned to this action.

---

In addition to the cases filed in the Central District, on May 21, 2014, Plaintiff filed an appeal in the Ninth Circuit of an interlocutory order in Plaintiff's section 2241 habeas action, which the court denied on June 6, 2014 for lack of jurisdiction. (See Bosworth v. Ives, 9th Cir. Case No. 14-55861). The Court takes judicial notice of Plaintiff's other pending cases in the Central District and the Ninth Circuit. See In re Korean Air Lines Co., Ltd., 642 F.3d 685, 689 n.1 (9th Cir. 2011) (a court may take judicial notice of a court's own records in other cases and the records of other courts).

24

It shall not refer in any manner to any previously filed complaint in this matter.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should make clear what specific factual allegations give rise to his claims. **<u>Plaintiff is advised to omit any claims for which he lacks a sufficient factual basis as they will be subject to dismissal.</u>**

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies described above, will result in a recommendation that this action be dismissed with prejudice for failure to prosecute and/or failure to obey Court orders pursuant to Federal Rule of Civil Procedure 41(b). **Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.**

DATED:   September 4, 2014

                                                    /S/
                                         SUZANNE H. SEGAL
                                         UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**